UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JESSICA L. BUZZO, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:19-CV-198-HBG |
| ANDREW M. SAUL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 12].

Now before the Court is Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 13 & 14] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16]. Jessica L. Buzzo ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **GRANT** Plaintiff's motion and **DENY** the Commissioner's motion.

## I. PROCEDURAL HISTORY

On February 2, 2016, Plaintiff protectively filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, claiming a period of disability that began on October 1, 2014. [Tr. 172–73].[1] After her application was denied

---

[1] The Court notes that the disability decision states that Plaintiff filed her application on February 1, 2016. [Tr. 19].

initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 112–13]. A hearing was held on August 8, 2018. [Tr. 37–66]. On October 31, 2018, the ALJ found that Plaintiff was not disabled. [Tr. 19-31]. The Appeals Council denied Plaintiff's request for review on September 23, 2019 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on November 13, 2019, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2020.
>
> 2. The claimant has not engaged in substantial gainful activity since October 1, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease, obesity, PTSD, depression, and anxiety (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she would be limited pursuant to Exhibit 6A (concentration, persistence, and pace can be maintained throughout the workday/workweek with occasional disruption due to psychological based symptoms; she would do better in work settings with limited social demands including casual, occasional interaction with the public and

2

coworkers; and can adapt to occasional changes in work routine).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 13, 1985 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2014, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 21–30].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.  DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

4

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).
5

## V. ANALYSIS

Plaintiff asserts that the ALJ erred by finding that her migraine headaches were a nonsevere impairment, as well as consequently failing to consider the extent to which this impairment impacted her ability to perform work-related activities. Additionally, Plaintiff claims that the ALJ's determination that her migraines were a nonsevere impairment is not supported by substantial evidence.

In the disability decision, the ALJ found that Plaintiff's degenerative disc disease, obesity, PTSD, depression, and anxiety were severe impairments, while noting that Plaintiff "also alleged disability due to migraine headaches." [Tr. 22]. The ALJ acknowledged Plaintiff's testimony that she would be unable to work a full week due to her migraine headaches. However, the ALJ noted that "[w]hile she has a clear history of presentations with migraine headaches, a CT scan of the brain was normal with no evidence of intracranial injury and an MRI of the brain on June 6, 2017 showed no acute cranial findings." [*Id.*]. Additionally, the ALJ found that while Plaintiff received medications from her primary care providers, "[s]he has not required emergency room treatment for migraine headaches." [*Id.*].

At step two, the ALJ is required to consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. §§ 404.1508; 416.920(a)(4)(ii); 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508; 416.908. Additionally, an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous

6

period of at least 12 months." 20 C.F.R. § 404.1509.

To be found disabled, "the ALJ must find that the claimant has a severe impairment or impairments" at step two. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). An impairment, or combination of impairments, will be found severe if the impairment(s) "significantly limit[ ] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The step two determination is "a de minimis hurdle" in that "an impairment will be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90).

Further, it is well settled that the ALJ's failure to identify some impairments as "severe" is harmless where the ALJ continues the disability determination and considers both severe and nonsevere impairments at subsequent steps of the sequential evaluation as required by the regulations. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").

20 CFR § 404.1545(e) states that the SSA will "consider the limiting effects of all your impairment(s), even those that are not severe, in determining" the claimant's RFC. *See, e.g.*, 20 CFR § 416.945(e); *see also* SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's

7

impairments, even those that are not 'severe.'").

Plaintiff claims her migraines are "her primary impairment which prevents her from working a full time job on a consistent basis," and points to her testimony that her headaches began in 2010 and their frequency, length, and pain all increased after a serious car wreck in 2014. [Doc. 14 at 4]; *see* [Tr. 45–46]. Plaintiff also reviews her submitted affidavit and testimony regarding the frequency of her migraines, summarizing that she had a migraine at least twenty days out of a given month, with her being forced to stay in bed approximately five to six days a month. Plaintiff testified that her greatest relief has come from Toradol shots, and that she was unable to afford Botox injections. *See* [Tr. 51–53]. Plaintiff also reviews an August 15, 2016 headache questionnaire, wherein she reported having headaches three or four days every week, which last two-to-three days, and that she had been having headaches of this severity for eight years. [Tr. 202]. Plaintiff noted that she still gets these headaches while being prescribed Topamax, and they put her in bed for about two days two times per month, as well as that she has headaches twenty days out of the month and is in bed five out of twenty days. [*Id.*]. Moreover, Plaintiff's August 1, 2018 affidavit states that she recorded all of her migraine headaches and dates of work she had to miss as a substitute teacher from June 2017 through July 2018. [Tr. 248].

Next, Plaintiff reviews the medical record with respect to her migraine headaches. Plaintiff cites to a November 22, 2013 treatment note from Rural Health Services listing common migraines as a chronic problem, along with a prescription for Topamax. [Tr. 600–602]. Migraines are additionally reported on treatment records for February 11, 2014, February 17, 2014, and January 23, 2015. [Tr. 586–98]. A May 28, 2015 treatment note indicates a reported moderate migraine headache which had lasted two days with recurring symptoms, although it was improving, as well as aggravating factors including bright lights and noise. [Tr. 581]. Additionally, the treatment

8

notes reflect Plaintiff reporting having migraines twice weekly. [*Id.*]. A follow-up visit on September 21, 2015 lists refractory migraines without auras as a chronic condition since July 2, 2013, as well as migraines as a chronic condition since May 28, 2015. [Tr. 575]. Plaintiff was also prescribed Topiramate beginning May 15, 2015. [Tr. 579]. Plaintiff further cites to a February 21, 2017 treatment note indicating that she reported that her "headache medication [was] not working for her," as she was currently prescribed Topamax "but continues to get headaches 3-4x/week." [Tr. 859]. Plaintiff's prescription was changed from 50mg of Topamax to 200mg of Trokandi daily. [Tr. 864]. Plaintiff also cites to several additional treatment records where her history of headaches was reported.

On June 8, 2017, Plaintiff was referred to Dr. Otakar Krcal, MD, a neurologist, who noted that Plaintiff presented with migraine headaches and she reported that she became unresponsive to treatment for her migraines in October 2014 and that her migraines occur four to five days per week. [Tr. 893]. Additionally, the treatment note reflects that Plaintiff reported being in the third day of a current migraine, which required her to lay in a dark room with an ice pack on her head and a heating pad on her neck. [*Id.*]. An MRI of Plaintiff's brain without contrast was performed on June 5, 2017 which revealed no acute intracranial findings but a large mucous retention cyst in the right maxillary sinus. [Tr. 896]. Dr. Krcal's records reflect that Plaintiff would be weened off Topamax, prescribed Nortriptyline for her headache prophylaxis, and was given a Toradol 60 mg injection. [*Id.*]. At Plaintiff's follow-up visit on August 8, 2017, she reported that the new prescribed Nortriptyline had not lowered the number of headaches but had lessened their severity. [Tr. 889]. Dr. Krcal then discontinued Nortriptyline and prescribed Gabapentin. [Tr. 892].

Moreover, an October 16, 2017 treatment note details that Plaintiff reported that her migraines occur three-to-four days per week and that the headaches were throbbing and increased

9

with activity. [Tr. 885]. Plaintiff stated having nausea and vomiting, blurry vision, ringing in the ears with right greater than left, photophobia, and phonophobia, and that to reduce the symptoms, she lays in a dark room with an ice pack on her head and a heating pad on her neck. [*Id.*]. The treatment note indicated that Plaintiff was currently employed as a substitute teacher [*Id.*], and Plaintiff was prescribed Propranolol for her headache frequency [Tr. 888]. Plaintiff then presented with an intractable migraine headache on January 4, 2018. [Tr. 881].

A January 16, 2018 treatment note details that Plaintiff had been having a continuous headache of fluctuating severity since December 24, 2017, that she visited the headache clinic on June 4, 2018 and achieved some relief of her headache, and then visited her primary care provider—who gave her Toradol that resolved the headache for the rest of the day but that it came back the next morning. [Tr. 876]. Plaintiff reported worsening pain and blurry vision from bright lights. [*Id.*]. The treatment note states that Plaintiff "has tried and failed Topamax BID and nortriptyline without relief," as well as that "[s]he has tried Imitrex and triptan nasal spray with some relief but does not tolerate due to chest tightness and burning sensation in her neck." [Tr. 880]. Lastly, the treatment note reflects that Botox therapy was discussed with Plaintiff and that she was provided with samples of Cambia. [*Id.*]. Plaintiff states that she testified at the hearing that she could not afford Botox and was taking Cambia. [Tr. 52].

With respect to the applicable medical opinions, Saul Juliao, MD, evaluated the evidence of record at the initial level of the agency's review on September 13, 2016 and found Plaintiff's migraines to be a nonsevere impairment, while noting that Plaintiff reported migraine headaches for two days about twice a month, which would not satisfy the criteria under Listing 11.03. [Tr. 78]. Dr. Juliao stated that Plaintiff "is alleging headaches/migraines at a potentially listings level severity," but the medical record did not support this claim "as there is no ER/document visits to

10

her PC for this" and "[t]he allegation of headaches/migraines 20 days out of 30 days of a month is not consistent with the medical evidence in [the] file." [*Id.*]. Lastly, Dr. Juliao noted that Plaintiff's functions do "not appear to [be] significantly limited." [*Id.*]. Kanika Chaudhuri, MD, evaluated the evidence of record at the reconsideration level of the agency's review on November 16, 2016 and also found Plaintiff's migraines to be a nonsevere impairment, while similarly finding that the medical record did not support Plaintiff's allegations regarding her migraines. [Tr. 96].

Therefore, Plaintiff claims that the ALJ's Step Two finding that her migraines were not a severe impairment is not supported by substantial evidence, as the ALJ "failed to mention the numerous medication changes for the disorder and [the] increased severity of the disorder since 2015." [Doc. 14 at 11]. Moreover, Plaintiff asserts that under Social Security Ruling 19-4p, her migraine headaches would have met Listing 11.03.[2] Lastly, Plaintiff challenges the opinions of the nonexamining state agency physicians, claiming that they "mischaracterized the headache questionnaire when giving their opinions" and that "[n]either of these two physicians had the benefit of reviewing her records after [November] 2016 including her neurological care with Dr. Krcal." [*Id.* at 9, 12].

The Commissioner largely does not respond to Plaintiff's arguments regarding the ALJ's Step Two finding. Rather, the Commissioner claims that "Plaintiff's argument is not legally relevant," because "the ALJ found at least one severe impairment and considered the impairments in combination, so remand is not necessary for the ALJ to identify an additional impairment as

---

[2] While Plaintiff cites to Social Security Ruling 19-4p, "Plaintiff acknowledges[ ] the ruling was not effective until August 26, 2019, long after the ALJ's decision in this case." *See McWilliams v. Comm'r of Soc. Sec.*, No. 5:19 CV 2363, 2020 WL 7684864, at *12 n.8 (N.D. Ohio Aug. 26, 2020), *report and recommendation adopted by*, 2020 WL 7043176 (N.D. Ohio Dec. 1, 2020).

11

severe." [Doc. 16 at 9–10]. The Commissioner submits that "[a]n ALJ's thorough review of the record and the statement that all impairments were considered in combination sufficiently demonstrates that all impairments were considered in combination as the regulation directs." [*Id.* at 10].

First, the Court agrees with the Commissioner that whether the ALJ "erred in determining" that Plaintiff's migraine headaches were not a severe impairment is "legally irrelevant" because the ALJ found several other impairments to be severe. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). "An erroneous finding of nonseverity at step two is therefore harmless where the ALJ properly considers nonsevere impairments at later steps." *Id.* However, in order for such a determination of a nonsevere impairment to be legally irrelevant, the ALJ must have "properly considered [Plaintiff's] nonsevere impairments at later steps." *Id.*

The Commissioner's argument is based on the Sixth Circuit's recent finding in *Emard*, where the Sixth Circuit found that the ALJ had complied with 20 CFR § 416.945(e) and SSR 96-8p when "[a]lthough the ALJ did not specifically discuss the combined effect of Emard's impairments or mention Emard's nonsevere impairments in assessing his residual functional capacity, she stated that she had carefully considered the entire record and 'all symptoms' at this step in the process." *Id.* at 851; *see also id.* (As in *Gooch* [*v. Sec'y of Health & Human Servs.*, 833 F.2d 589 (6th Cir. 1987)], the ALJ's statements that she had considered the entire record and all of Emard's symptoms suggest that she had considered Emard's impairments in combination"). In *Emard*, the Sixth Circuit discussed that:

> Moreover, the ALJ specifically noted in her summary of the applicable law that she was required to comply with SSR 96-8p's mandate to "consider all of the claimant's impairments, including impairments that are not severe." District courts in this

12

circuit have held that an ALJ need not specifically discuss all nonsevere impairments in the residual-functional-capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p. *See, e.g.*, *Morrison v. Comm'r of Soc. Sec.*, No. 1:14-CV-1059, 2016 WL 386152, at *4 (W.D. Mich. Feb. 2, 2016), *aff'd*, No. 16-1360, 2017 WL 4278378 (6th Cir. Jan. 30, 2017); *Davis v. Comm'r of Soc. Sec.*, No. 1:14-CV-0413, 2015 WL 5542986, at *4 (W.D. Mich. Sept. 18, 2015). These decisions have relied on this court's decision in *White v. Commissioner of Social Security*, 572 F.3d 272 (6th Cir. 2009), where an ALJ's statement that she considered a Social Security Ruling pertaining to credibility findings sufficed to show that the ALJ complied with that ruling. *Id.* at 287. **The ALJ's express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by Emard's nonsevere impairments at step two of her analysis, fully support our conclusion that the ALJ complied with 20 C.F.R. § 416.945(e) and SSR 96-8p.**

*Id.* at 851–52 (emphasis added).

Here, similar to *Emard*, the ALJ acknowledged that in making the RFC determination, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." [Tr. 24]. The ALJ also found that Plaintiff's "allegations of disabling pain and other symptoms are not entirely consistent with or supported by the totality of the evidence." [Tr. 27].

However, the ALJ did not explicitly reference SSR 96-8p or discuss "the functional limitations" imposed by Plaintiff's nonsevere impairment (her migraine headaches) at step two of his analysis. *See Emard*, 953 F.3d at 852.[3] The Court cannot find that the ALJ's step two analysis regarding Plaintiff's migraines constitutes a discussion of the functional limitations imposed by the nonsevere impairment when the ALJ merely reviewed that the MRI of Plaintiff's brain

---

[3] The ALJ failed to discuss Plaintiff's migraine headaches in any detail during the RFC determination.

"showed no acute cranial findings," that Plaintiff received medication, and had not required emergency room treatment for her migraines. [Tr. 22].[4]

While the ALJ failed to discuss Plaintiff's extensive treatment records after being referred to a neurologist, multiple treatment notes stating that prescribed medications were not effective, and medical records documenting Plaintiff's continued reports and treatment for chronic migraines, most importantly, the ALJ did not make any findings regarding potential functional limitations stemming from Plaintiff's migraines. In particular, Plaintiff testified and provided factual support for her claims that she was unable to work due to disabling symptoms stemming from her migraines. *See, e.g.*, *Buckmaster v. Saul*, No. 1:18-CV-135-CHS, 2019 WL 4723802, at *3 (E.D. Tenn. Sept. 26, 2019) ("According to medical records and Plaintiff's reports, her migraines last one to three days during which she is incapacitated by the symptoms and the medications she takes to address them. The RFC the ALJ has assigned to Plaintiff, however, seems to contemplate no absences caused by migraines. If the ALJ is taking the position that she will not have any more migraines, or that she can work through her migraines, or that she will have them so infrequently that absences caused by them will not affect her ability to engage in substantial gainful employment, the ALJ needs to explicitly say so and support his conclusion with substantial evidence. As it stands, the current RFC is not supported by substantial evidence."); *Patterson v. Colvin*, 5:14-CV-1470, 2015 WL 5560121, at *2 (N.D. Ohio Sept. 21, 2015) ("Even when there is substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

---

[4] The Court notes that the MRI of Plaintiff's brain from June 5, 2017 did reveal no acute intracranial findings but also a large mucous retention cyst in the right maxillary sinus. [Tr. 896].

14

Several courts within the Sixth Circuit interpreting *Emard* have underwent a similar analysis. *See, e.g.*, *Trent v. Saul*, No. 7:19-CV-109-CHB, 2021 WL 185233, at *3–4 (E.D. Ky. Jan. 19, 2021) ("The problem is, nowhere in the ALJ's decision does he consider Trent's non-severe depression and anxiety during later steps, as required by SSA regulations . . . The ALJ did not incorporate even mild mental limitations into his RFC or discuss Dr. Ford's findings or Trent's therapists' treatment notes at step four."); *Booth v. Saul*, No. CV 19-10824, 2020 WL 5522987, at *3 (E.D. Mich. Aug. 27, 2020) ("Here, the ALJ noted her obligation to consider nonsevere impairments under SSR 96-8p . . . But unlike in *Emard*, the ALJ did not discuss a functional limitation caused by Booth's CVI—a need to elevate her legs—that is supported by medical evidence in the record."), *report and recommendation adopted by*, 2020 WL 5514183 (E.D. Mich. Sept. 14, 2020).

A review of district courts affirming an ALJ's consideration of nonsevere impairments after *Emard* also establishes the ALJ's failure in the present case to appropriately consider Plaintiff's migraine headaches as a nonsevere impairment. *See, e.g.*, *Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-897, 2020 WL 3620041, at *10 (N.D. Ohio Apr. 21, 2020) (finding "[t]he identified factors from *Emard* are also present in the ALJ's decision" where the ALJ explained at step four that an ALJ "must consider all of the claimant's impairments, including impairments that are not severe," cited to 20 CFR 404.1520(e) and SSR 96-8p, stated that she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence," explained that "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis," and "expressly" discussed the functional limitations from the plaintiff's nonsevere impairments at step two of her analysis) (internal citations and quotation marks

15

omitted), *report and recommendation adopted sub nom.*, *Garcia v. Comm'r of Soc. Sec. Admin.*, 2020 WL 3617909 (N.D. Ohio July 2, 2020). Critically, the ALJ in the present case failed to "expressly" discuss his findings on any functional limitations stemming from Plaintiff's migraine headaches. *Id.* The ALJ failed to assess any limitations as a result of Plaintiff's migraines, as well as failed to detail why he found that no limitations were applicable or did not impact Plaintiff's ability to perform work-related activities.

Moreover, this finding comports with applicable Sixth Circuit precedent (albeit not discussed by *Emard*). *See, e.g.*, *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015) ("[T]he ALJ's step-four determination regarding Winn's RFC did not consider Winn's [nonsevere] mental impairments in a meaningful way."); *White v. Comm'r of Soc. Sec.,* 312 F. App'x 779, 787 (6th Cir. 2009) (holding that, "[o]nce one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe").[5] Accordingly, the Court finds that the ALJ committed reversible error by failing to consider the limitations caused by Plaintiff's nonsevere impairment (migraine headaches) in the RFC determination.

---

[5] The Court also notes the decisions of several courts nationwide finding remand for an ALJ's failure to consider a plaintiff's nonsevere migraine headaches in the RFC determination in extremely similar circumstances—although not bound by the applicable precedent in *Emard*. *See, e.g.*, *Hall v. Saul*, No. CIV-19-153-SPS, 2020 WL 5422562, at *4 (E.D. Okla. Sept. 10, 2020) ("In this case, although the ALJ summarized the evidence relating to the claimant's migraines and chronic pain syndrome, he nevertheless committed reversible error by failing to account for these impairments at step four, either by including limitations in the claimant's RFC or explaining why such limitations were unnecessary."); *Graham v. Berryhill*, No. 16-CV-6787-FPG, 2017 WL 5019274, at *3 (W.D.N.Y. Nov. 3, 2017) ("In light of the ALJ's discussion of Graham's migraines at step two and the medical evidence of record, the Court finds that the ALJ did not err when he found that impairment to be nonsevere. Despite this finding, however, remand is still required because the ALJ failed to account for Graham's migraines when determining her RFC.").

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 13**] will be **GRANTED**, and the Commissioner's Motion for Summary Judgment [**Doc. 15**] will be **DENIED**. This case will be **REMANDED** to the SSA for the ALJ to appropriately address the claimant's severe and non-severe mental and physical impairments in the RFC determination.

ORDER ACCORDINGLY.

*Bruce Guyton*
United States Magistrate Judge